UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*FILED*

MAR 13 2025

JUDGE JOHN ROBERT BLAKEY
United States District Court

UNITED STATES OF AMERICA

v.

KRISHNASWAMI SRIRAM

No. 22 CR 423

Judge John Robert Blakey

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Department of Justice, Tax Division; the United States Department of Justice, Criminal Division, Fraud Section; and Defendant KRISHNASWAMI SRIRAM ("defendant"), and his attorneys, TODD PUGH and STEVEN WEINBERG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.    The Indictment in this case charges defendant with the following:

a.    One count of willfully attempting to evade and defeat the payment of approximately $1.6 million of individual income tax due and owing by him to the United States of America, for tax years 1997, 1998, 1999, 2001, and 2012, in violation of Title 26, United States Code, Section 7201 (Count One); and

1

b: Four counts of willfully making and subscribing a false U.S. Individual Income Tax Return (Form 1040) for tax years 2013 to 2016, which were verified by a written declaration that they were made under penalty of perjury and filed with the Internal Revenue Service ("IRS"), and which defendant did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1) (Counts Two through Five); and

c. Five counts of willfully aiding, assisting in, procuring, counseling, or advising the preparation and presentation to the IRS false and fraudulent U.S. Individual Income Tax Returns (Forms 1040), in violation of Title 26, United States Code, Section 7206(2) (Counts Six through Ten).

3. Defendant has read the charges against him contained in the Indictment, and those charges have been fully explained to him by his attorneys.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the Indictment, which charges Defendant with willfully attempting to evade and defeat payment of approximately $1.6 million of individual income tax due and owing by him to the United States of America, for tax years

/ / /

2

1997, 1998, 1999, 2001, and 2012, in violation of Title 26, United States Code, Section 7201.

### Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the Indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

a. Count One

From at least in or about November 2011, through in or about April 2017, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant, KRISHNASWAMI SRIRAM, knowingly having been assessed a tax due and owing of $1,611,272 for tax years 1997, 1998, 1999, 2001, and 2012, willfully attempted to evade and defeat the payment of that tax due and owing by him to the United States, and committed acts of evasion in doing so such as using nominees to conceal assets and income, filing false Offers in Compromise with the IRS, filing false and fraudulent individual income tax returns for himself and others with the IRS, and transferring funds to unreported overseas accounts, in violation of Title 26, United States Code, Section 7201.

At all relevant times, defendant was a practicing medical doctor and resident of Lake Forest, Illinois.

In or around August 2010, the IRS issued Notices of Deficiency to

3

defendant for tax years 1997, 1998, and 1999 that detailed the amount of individual income taxes, penalties, and interest he owed for those tax years. In or around November 2010, defendant challenged these assessments in the U.S. Tax Court. Ultimately, in or around September 2011, the parties entered a stipulation, and the Tax Court affirmed IRS assessments against defendant for individual income taxes, interest, and penalties for tax years 1997, 1998, and 1999 totaling approximately $760,000. Two months later, defendant quitclaimed two rental properties – a property in Peekskill, New York and another in Arlington Heights, Illinois – to two of his children, Child A and Child B. Defendant, however, continued to maintain ownership and control of both properties by, among other things, collecting rental income and paying property-related expenses from in or around November 2011 through early 2016.

In or around December 2012, defendant incorporated or caused to be incorporated two businesses – Lake Forest Cardiology, LLC ("LFC") and Home Doctor's Management, LLC ("HDM") – with the Illinois Secretary of State. Defendant was the sole owner and shareholder of LFC and operated it as an S-Corporation. Defendant ran his medical practice under LFC and opened a business bank account for LFC at US Bank. Defendant caused his three children to be equal one-third owners and shareholders of HDM, a company that would purportedly manage LFC's business. Defendant caused one of his children, Child C, to be listed as HDM's registered agent in the

company's articles of incorporation. In or around January 2013, defendant directed Child C to open business bank accounts for HDM at Bank of America, but defendant controlled these accounts and funds therein through Child C.

In or around April 2013, defendant filed a U.S. Individual Income Tax Return, Form 1040, for tax year 2012 reporting a tax due and owing. Defendant, however, omitted income and, in or around December 2014, the IRS assessed additional tax due of approximately $8,925.

In or around February and March 2013, defendant filed two petitions with the U.S. Tax Court challenging the IRS's efforts to collect defendant's tax due and owing for tax years 1997, 1998, 1999, and 2001. Both matters resolved pursuant to stipulations by the parties in or around January and February 2014, and resulted in the U.S. Tax Court affirming the IRS's assessments against the defendant for tax years 1997, 1998, 1999, and 2001, in a total amount of approximately $1,636,884. The U.S. Tax Court also ordered the IRS to pause its collection efforts for a period of time to allow defendant to submit a request for an alternative to enforced collection by the IRS.

In or around June 9, 2014, defendant submitted a false Offer in Compromise, Form 656, accompanied by a Collection Information Statement for Wage Earners and Self-Employed Individuals, Form 433-A (collectively referred to as an "OIC"), to the IRS in an attempt to reduce his tax due and

owing for tax years 1997, 1998, 1999, 2001, and 2012. The OIC was false because defendant omitted material assets, income, interest, and expenses on the Form 433-A, which requires, among other things, a complete and honest accounting of an individual's assets, income, interests, and expenses and is submitted and signed under the penalty of perjury.

Specifically, the OIC was false because the defendant omitted the following assets and income: (a) his ownership and control of and income earned from the rental properties in Peekskill, New York and Arlington Heights, Illinois; (b) his ownership, control, and interest in HDM, and its bank accounts; and (c) his ownership of and interests in foreign bank and financial accounts with Federal Bank Limited, Calibre Consultants, and Calibre Financial Services Limited in India, and the asset value of and interest income therefrom; and (d) his ownership, control, and asset value of an investment account at Vanguard. In or around June 2014, the IRS returned defendant's OIC.

In or around December 2014, defendant once again submitted a false OIC omitting the material assets and income detailed above. In or around November 2015, the IRS rejected defendant's OIC.

In or around December 2015, defendant appealed the IRS's rejection of his OIC. From that time, through in or around April 2017, in support of his appeal, the defendant submitted statements and documentation to the IRS Office of Appeals in support of the OIC that omitted the material information

regarding a complete and accurate description of his assets, income, and other financial interests such as rental properties he quitclaimed to his children but nevertheless retained ownership and control over and collected rental income therefrom, and his ownership, control, and income from various domestic and foreign bank and financial accounts.

In addition to filing false OICs, defendant also:

(1) filed and caused to be filed, with the IRS false personal U.S. Individual Income Tax Returns, Forms 1040, for tax years 2011, 2012, 2013, 2014, 2015, and 2016 that did not report the income generated by his foreign financial accounts at FBL, Calibre Consultants, Calibre Financial Services Limited, and the income and expenses generated by the rental of the Arlington Heights Property and Peekskill Property. Defendant also prepared and filed, and caused to be prepared and filed, with the IRS false U.S. Individual Income Tax Returns, Forms 1040, for Child A for tax years 2013 and 2014 that reported the income and expenses generated by the rental of the Arlington Heights Property and Peekskill Property;

(2) prepared and filed and caused to be prepared and filed, with the IRS false U.S. Individual Income Tax Returns, Forms 1040, for Child B for tax years 2014, 2015, and 2016 that reported the income and expenses generated by the rental of the Arlington Heights Property and Peekskill Property;

(3) sent and caused to be sent, money from bank accounts he owned

and controlled in the United States to a bank account he owned and controlled in India at FBL; and

(4)     conducted and caused to be conducted, personal financial affairs through the HDM business bank accounts at BOA.

In so doing, defendant attempted to evade payment of approximately $1.6 million in taxes he owed to the United States.

b. Relevant Conduct

Defendant knowingly and willfully made and subscribed, and filed and caused to be filed with the IRS materially false and fraudulent individual income tax returns as described in Counts Two through Five of the Indictment. The total tax loss attributable to these false individual income tax returns is approximately $79,603. Additionally, defendant knowingly and willfully aided and assisted in the preparation and filing of materially false and fraudulent individual income tax returns as described in Counts Six through Ten of the Indictment.

7.     Defendant, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offense:

On or about August 2, 2021, in the Northern District of Illinois, Eastern Division, defendant knowingly and willfully made and caused to be made a materially false and fictitious statement and representation, and made and caused to be made a materially false writing and document, knowing the same to contain a materially false and fictitious statement and representation, in a matter involving a health care

benefit program in connection with the delivery of and payment for health care services, namely, an entry in defendant's medical records system stating that defendant provided in-home physician services to Patient N.S., a Medicare beneficiary, on or about March 3, 2021, when defendant knew that he had not provided such services, in violation of Title 18, United States Code, Section 1035.

More specifically, defendant was a physician licensed in the state of Illinois. In or around October 2010, defendant enrolled with Medicare as an individual provider. Lake Forest Cardiology ("LFC") was a home visiting physician company owned by defendant and based in Lake Forest, Illinois. In or around December 2012, defendant enrolled LFC with Medicare as an institutional provider. Medicare was a health care benefit program, as defined by Title 18, United States Code, Section 24(b).

By becoming a participating provider in Medicare, defendant agreed to abide by the policies, procedures, rules, and regulations governing reimbursement for services. Medicare regulations required enrolled health care providers to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the provider.

From at least 2010 to 2022, defendant provided in-home physician services to Medicare beneficiaries and caused LFC to submit claims to Medicare for those in-home physician services. Defendant utilized an electronic records management system to document patient encounters according to Medicare regulations, and the

9

entries he made into this electronic records system were subsequently used to bill claims to Medicare.

According to defendant's electronic records system, he claimed to have provided in-home physician services to patient N.S., a Medicare beneficiary, on March 3, 2021. However, as defendant knew, he had not provided the services. N.S. resided at an inpatient health facility that was not N.S.'s home from February 24, 2021, to April 16, 2021. Further, defendant's entry for that encounter in the electronic records system included no information for chief complaint, vitals, and screenings/interventions/assessments. Defendant sought reimbursement from Medicare in the amount of $857.60 for this purported March 3, 2021 encounter through a claim dated August 2, 2021. Medicare paid $188.86 for this claim.

In addition to the claim identified above, between approximately February 2012 and January 2022, according to defendant's electronic records system, defendant falsely claimed to have provided approximately 502 in-home physician visits that defendant purportedly provided on dates when the patients in question resided at inpatient facilities other than their homes, and another approximately 204 in-home physician visits that defendant purportedly provided on dates after the patients in question had died. As a result, defendant sought reimbursement from Medicare in the amount of $136,980.36 for the above 706 purported visits with Medicare beneficiaries, when such visits had not occurred. Medicare paid approximately $67,033.33 on the claims for those 706 purported visits.

On or about February 8, 2022, as part of the investigation into this offense, federal agents served a grand jury subpoena on defendant for LFC records of certain patients treated by defendant, and defendant subsequently produced those records. Those records show numerous instances in which defendant electronically signed notes on February 15, 2022, for patient encounters that purportedly occurred as far back as 2018. These included notes for in-home physician services that defendant had not provided, including services purportedly provided to patients who, at the time of the purported encounter, resided at inpatient facilities other than their homes.

### Maximum Statutory Penalties

8.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a.    A maximum sentence of 5 years' imprisonment and a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the Court must order costs of prosecution, estimated not to exceed $500. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

   b.    Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he is pleading guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

9.    Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider

that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2024 Guidelines Manual.

/ / /

b.    **Offense Level Calculations.**

Count One

i.    The base offense level is 22, because the tax loss of $1,691,065, including relevant conduct, is more than $1,500,000 but less than $3,500,000, pursuant to U.S.S.G. §§ 2T1.1(a)(1) and 2T4.1(I).

Stipulated Offense

ii.    The base offense level is 6, pursuant to U.S.S.G. § 2B1.1(a)(2).

iii.    Because the actual loss to Medicare, including relevant conduct ($67,033.33), is more than $40,000 but less than $95,000, the offense level is increased by 6 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(E).

iv.    Because the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, the offense level is increased by 2 levels. U.S.S.G. § 3B1.3.

v.    Because the defendant attempted to obstruct or impede the administration of justice with respect to the investigation of the stipulated offense, the offense level is increased by 2 levels. U.S.S.G. § 3C1.1.

vi.    The total offense level for the stipulated offense, therefore, is 16.

///

13

Grouping

      vii.      Pursuant to Guideline § 3D1.2, Count One and the stipulated offense do not group.

      viii.      The group with the highest offense level is Count One, with an offense level of 22. That group is assigned one unit pursuant to Guideline § 3D1.4(a).

      ix.      The group with the next highest offense level is the stipulated offense, with an offense level of 16. That group is assigned one-half units pursuant to Guideline § 3D1.4(b) because it is 6 levels less serious than the count of conviction.

      x.      The total number of units is 1½. Pursuant to Guideline § 3D1.4, because there are 1½ units, there is a one-level increase in the offense level, which, when added to the offense level applicable to the highest offense level, 22, results in a combined offense level of 23.

      xi.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office; the United States Department of Justice, Tax Division; the United States Department of Justice, Criminal Division, Fraud Section; and the Probation Office with all requested

14

financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

xii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal four and defendant's criminal history category is III.

i.    On or about April 23, 2009, defendant was sentenced to 16 months of imprisonment following his convictions in the Northern District of Illinois of mail fraud, health care fraud, and tax fraud (case no. 00 CR 894). On or about February 4, 2010, following a motion by the government for a sentence reduction under Rule 35 of the Federal Rules of Criminal Procedure, defendant's sentence was reduced to 287 days' time served. Pursuant to Guideline §§ 4A1.1(b) and 4A1.2(e)(2), defendant receives two criminal history points for this sentence.

ii.    On or about December 5, 2013, defendant was convicted in the state of Missouri of violation of an order of protection and was sentenced to two

15

years' probation. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this sentence.

                iii.     On or about May 21, 2014, defendant was convicted in the state of Missouri of violation of an order of protection–2nd offense and was sentenced to five years' probation. Pursuant to Guideline § 4A1.1(c), defendant receives one criminal history point for this sentence.

/ / /

d. **Anticipated Advisory Sentencing Guidelines Range.**
Therefore, based on the facts now known to the government, the anticipated offense level
is 20 which, when combined with the anticipated criminal history category of III, results
in an anticipated advisory sentencing guidelines range of 41 to 51 months'
imprisonment, in addition to any supervised release, fine, and restitution the Court may
impose.

11. Defendant, his attorney, and the government acknowledge that the above
guidelines calculations are preliminary in nature and are non-binding predictions upon
which neither party is entitled to rely. Defendant understands that further review of the
facts or applicable legal principles may lead the government to conclude that different
or additional guidelines provisions apply in this case. Defendant understands that the
Probation Office will conduct its own investigation and that the Court ultimately
determines the facts and law relevant to sentencing, and that the Court's
determinations govern the final guideline calculation. Accordingly, the validity of this
Agreement is not contingent upon the probation officer's or the Court's concurrence with
the above calculations, and defendant shall not have a right to withdraw his plea on the
basis of the Court's rejection of these calculations.

12. Both parties expressly acknowledge that this Agreement is not governed
by Fed.R.Crim.P.11(c)(1)(B), and that errors in applying or interpreting any of the
sentencing guidelines may be corrected by either party prior to sentencing. The parties
may correct these errors either by stipulation or by a statement to the Probation Office
or the Court, setting forth the disagreement regarding the applicable provisions of the

17

guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

13.     Each party is free to recommend whatever sentence it deems appropriate.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

### Restitution

15.     Defendant agrees to pay restitution pursuant to the following terms:

16.     **Restitution for the Tax Offense.** Defendant agrees to pay restitution to the United States Treasury arising from the offense conduct and relevant conduct set forth above totaling $1,691,065 pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664, with credit for any payments by defendant or on defendant's behalf prior to sentencing.

a.     Defendant understands that the amount of tax loss as calculated by the Internal Revenue Service may exceed the amount of tax due as calculated for restitution in the criminal case. Defendant further acknowledges that the IRS may use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-

18

based assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor defendant's timely payment of restitution according to that schedule will preclude the IRS from immediately collecting the full amount of any assessment.

      b.    Defendant further agrees that he will sign any appropriate IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax that he agrees to pay as restitution. Defendant also agrees to sign IRS Form 8821 "Tax Information Authorization."

      c.    Defendant agrees to send a notice of any payments made pursuant to this agreement to the following address, including defendant's name and social security number, the district court docket number assigned to this case, tax years for which restitution has been ordered, and a statement that the payment is being submitted pursuant to the district courts restitution order:

> IRS-RACS
> Attn: Mail Stop 6261, Restitution
> 333 W. Pershing Ave.
> Kansas City, MO 64108

      d.    Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. Defendant understands and agrees that the plea agreement does not resolve the defendant's civil tax liabilities, that the IRS may seek additional taxes, interest, and penalties from defendant relating to the conduct covered by this plea agreement, and that satisfaction of the restitution debt does not

19

settle, satisfy, or compromise defendant's obligation to pay any remaining civil tax liabilities.

17. **Restitution for the Stipulated Offense.** Defendant also agrees to pay restitution in relation to the stipulated offense. In particular, the defendant agrees to pay restitution to Medicare in the amount of $67,033.33, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664, with credit for any payments by defendant or on defendant's behalf prior to sentencing. Defendant agrees to send a notice of any payments made pursuant to this agreement to the following address, including defendant's name and social security number, the district court docket number assigned to this case, and a statement that the payment is being submitted pursuant to the district courts restitution order:

> CMS, Division of Accounting Operations
> P.O. Box 7520
> Baltimore    MD    21207-0520

18. Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court, the United States Attorney's Office; the United States Department of Justice, Tax Division; and the United States Department of Justice, Criminal Division, Fraud Section of any material change in economic circumstances that might affect his ability to pay restitution.

19. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

20.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court

21.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the Indictment as to defendant and the indictment in case 22 CR 433.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

22.     This Agreement is entirely voluntary and represents the entire agreement between the United States Department of Justice, Tax Division, and the United States Department of Justice, Criminal Division, Fraud Section, and defendant regarding defendant's criminal liability in case 22 CR 423.

23.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Department of Justice, Tax Division, and the United States Department of Justice, Criminal Division, Fraud Section, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

24.     Defendant understands that nothing in this Agreement shall limit the IRS in its collection of any taxes, interest or penalties from defendant. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

### Waiver of Rights

25.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him

unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        b.     **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant

understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

26.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of appellate rights specifically preserved above Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

27.     Defendant understands that the United States Department of Justice, Tax Division, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

28.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Department of Justice, Tax Division regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under

24

Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

29.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office, the United States Attorney's Office, and United States Department of Justice, Tax Division of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

**Other Terms**

30.    Defendant agrees to cooperate with the United States Department of Justice, Tax Division and the United States Attorney's Office for the Northern District of Illinois ("United States Attorney's Office") in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Department of Justice, Tax Division or United States Attorney's Office.

31.    Regarding matters relating to the IRS, defendant agrees to cooperate with the IRS in any tax examination or audit of defendant which directly or indirectly relate

25

to or arise out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

32.     Defendant will not object to a motion brought by the United States Department of Justice Tax Division or the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office and the United States Department of Justice, Tax Division, or an appropriate federal or state agency (including but not limited to the IRS), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes Defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be proposed or assessed by the IRS.

33.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

34.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

35.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

36.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

37.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

38. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____January 8, 2025_____

STUART M. GOLDBERG
Acting Deputy Assistant Attorney General
United States Department of Justice
Tax Division

CHRISTOPHER E. LIN
SARA E. HENDERSON
Trial Attorneys
United States Department of Justice
Tax Division

GLENN S. LEON
Criminal Division, Fraud Section
United States Department of Justice

VICTOR B. YANZ
ANDRES Q. ALMENDAREZ
Trial Attorneys
United States Department of Justice
Criminal Division, Fraud Section

KRISHNASWAMI SRIRAM
Defendant

TODD PUGH
STEVEN WEINBERG
ALEXANDRIA MICELI
Attorneys for Defendant

28